**BENISCH v. CAMERON et al.**

**Civ. 47–21.**

United States District Court
S. D. New York.
Dec. 1, 1948.

Morris J. Levy, of New York City, for plaintiff.

Mudge, Stern, Williams & Tucker, of New York City (George L. Trumbull, of New York City, of counsel), for defendant, Allan M. Cameron.

Willkie, Owen, Farr, Gallagher & Walton, of New York City (Mark F. Hughes and Raymond C. Murphy, both of New York City, of counsel), for defendant, Continental Can Co., Inc.

CONGER, District Judge.

The individual defendant moves pursuant to Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A. to dismiss the complaint herein upon two grounds: (1) That the complaint fails to aver that the plaintiff was a shareholder of the defendant corporation at the time of the transactions of which he complains or that his shares thereafter devolved upon him by operation of law, as required by Rule 23(b), F.R.C.P.; and (2) That in violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b), the action was commenced before the expiration of sixty days after plaintiff made demand upon the defendant corporation to institute such suit against the individual defendant.

Plaintiff, a stockholder of the defendant corporation, instituted this suit pursuant to Section 16(b) of the Securities Exchange Act of 1934[1] for an accounting and the

---

[1] For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and

recovery of profits realized by the individual defendant, an officer of said corporation, from purchases and sales, and sales and purchases of stock of the defendant corporation within periods of less than six months.

■ The complaint does not contain the averment urged by the moving party for the reason, as contended by the plaintiff, that compliance with Rule 23(b) is not required where the jurisdiction of the United States Courts is based upon a Federal question, rather than diversity of citizenship.[2] Jurisdiction here depends upon the Securities Exchange Act of 1934.

The question raised by the plaintiff's argument is not easily resolved. Authority may be found for both the affirmative and negative of the issue. See Moore's Federal Practice, Vol. II, Page 224 et seq. But disposition need not be made here.

■ Section 16(b) was designed to prevent certain abuses in connection with trading in securities registered on national exchanges. Specifically, it sought to protect stockholders from insiders with special information. Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. The Senate Committee on Banking and Currency in its Report on Stock Exchanges Practices, referring to Section 16(b), said: "Among the most vicious practices unearthed at the hearings before the subcommittee was the flagrant betrayal of their fiduciary duties by directors and officers of corporations who used their positions of trust and the confidential information which came to them in such positions, to aid them in their market activities. Closely allied to this type of abuse was the unscrupulous employment of inside information by large stockholders who, while not directors and officers, exercised sufficient control over the destinies of their companies to enable them to acquire and profit by information not available to others." S.Rep. 1455, 73rd Cong. 2d Sess., p. 55 (1934).

■ Although the right of action created by Section 16(b) is somewhat akin to the ordinary stockholder's derivative suit, it is plain from the reasons set forth in Section 2 of the Act, 15 U.S.C.A. § 78b, and in the preamble to Section 16(b), that it was primarily intended as an "instrument of a statutory policy of which the general public is the ultimate beneficiary.[3] Congress did not intend procedural restrictions to hamper such policy.

A further manifestation of this purpose is evident from the fact that suit might be instituted by any "security" holder of the issuer. And "security" is defined in Section 3, 15 U.S.C.A. § 78c, as "any note, stock, treasury stock, bond, debenture, certificate of interest, or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

Congress, therefore, could never have intended compliance with Rule 23(b) as a prerequisite to suit because the "security" holders authorized to sue under 16(b), other than a shareholder, cannot, by reason

---

purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

[2] It may be noted, however, that the complaint, whether intended as such or not, does partially comply with the Rule

by being verified and containing the allegation that the action is not a collusive one to confer jurisdiction on this Court.

[3] See Ruben and Feldman, Statutory Inhibitions Upon Unfair Use of Corporate Information by Insiders, 95 U. of Penn.L.Rev. 468, 472, et seq.

of their status, make the averment required by Rule 23(b).[4]

I hold that plaintiff need not comply with Rule 23(b).

■ The second ground for the motion is not so difficult. The problem has arisen before Judge Rifkind in Grossman v. Young, D.C.S.D.N.Y., 1948, 72 F.Supp. 375, and he held, rightly in my opinion, that the sixty-day period specified in Section 16(b) was enacted for the benefit of the corporation and not the profiting insider, and that the latter had no standing to raise the objection. The facts were the same in that the plaintiffs had demanded that the corporation sue within a specified time to avoid the defense of the statute of limitations, and the corporation having remained mute, the suit was commenced by plaintiffs within the sixty-day period.

Motion denied.

Settle order.

---

[4] See Yourd, Trading in Securities by Directors, Officers and Stockholders, Section 16 of the Securities Exchange Act, 38 Mich.L.Rev. 133, 154.