**COLBY v. KLUNE et al.**

Civ. 44-676.

United States District Court
S. D. New York.
Jan. 25, 1949.

Morris J. Levy, of New York City, for plaintiff.

Dwight, Harris, Koegel & Caskey, of New York City (Caesar L. Pitassy, of New York City, of counsel), for defendants.

CONGER, District Judge.

These are cross-motions for summary judgment pursuant to Federal Rules Civil Procedure, rule 56, 28 U.S.C.A.

The plaintiff, a stockholder of the defendant corporation, has instituted suit in accordance with Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b), for the recovery of profits realized by the defendant Klune from the purchases and sales of the common stock of the defendant corporation within periods of less than six months.

■ It appears that on September 27, 1944, the board of directors of the defendant corporation, pursuant to a plan adopted by the stockholders at a meeting held on May 16, 1944, granted options to certain executives of the company to purchase common stock of the corporation. The defendant Klune was authorized to purchase 2,500 shares. Klune exercised his option to the extent of 1,500 shares, which he sold at a profit.[1]

Section 16(a) of the Act provides as follows: "Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange (and a duplicate original thereof with the Commission) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been any change in such ownership during such month, shall file with the exchange a statement (and a duplicate original thereof with the Commission) indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month." 15 U.S.C.A. § 78 p(a).

Section 16 (b) provides: "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C.A. § 78p(b).

It is conceded by all parties that Klune was not an owner of more than 10 per cent of any class of equity security, nor was he a director or officer of the defendant corporation.

Rule X–3B–2 of the General Rules and Regulations of the Securities and Exchange Commission under the Securities Exchange Act of 1934 provides: "The term 'officer' means a president, vice president, treasurer, secretary, comptroller, and any other person who performs for an issuer, whether incorporated or unincorporated, functions corresponding to those performed by the foregoing officers."

---

[1] It appears from the papers that 500 shares, purchased August 27, 1946, were held until October 7, 1947, a period exceeding six months. This transaction would not be violative of the statute. The plaintiff's attorney so conceded upon the argument.

It is this Rule upon which the plaintiff bases his cross-motion for summary judgment, contending that Klune performed the duties of an officer.

I take it that this argument involves a question of fact unless, of course, Klune's duties are clearly known and stated beyond dispute. The problem then resolves itself into one of law.

Klune's duties are not in dispute. Plaintiff has stated them as he finds them and moves for summary judgment upon them.

Klune was employed in December, 1943, by the defendant corporation " * * * as a Production Manager at our studio at Los Angeles, California, or in any other executive or administrative capacity as may be required by our executives in charge of our business affairs in Los Angeles, California." (Paragraph 4 of letter agreement employing Klune).

It is the duty of a production manager " * * * to supervise the business details incident to the production of a number of pictures. It is his responsibility to see that the costs of a picture do not unreasonably or unnecessarily exceed the predetermined budget therefor. He must know the economics of the industry, and be completely familiar with the production techniques. He should be an expert on the subject of material and labor costs and on methods for controlling such costs." (Paragraph 10 of application to Regional Head of Stabilization of the Bureau of Internal Revenue seeking approval of proposed compensation to Klune).

An affidavit of Darryl F. Zanuck, vice-president in charge of production of the defendant corporation describes the duties of Klune as follows: "Raymond Klune, one of the defendants in the above entitled cause is the Production Manager employed by Twentieth Century Fox-Film Corporation at its said studios in Los Angeles, and, as such, his duties and responsibilities are to arrange for the procurement of all the physical facilities necessary in the production of the motion pictures produced by said corporation at said studios and, exclusive of the employment of actors, directors and writers, to procure for Twentieth Century Fox-Film Corporation the employees whose services are necessary in the production of its motion pictures and to co-ordinate their work in such production."

The excerpts that are quoted above adequately state the functions of Klune as plaintiff sees them. In effect they show Klune to be a superior combination of purchasing agent and personnel manager. No doubt the functions he performs and the responsibilities he assumes would be fit for the president or other officers of many corporations. But Rule X-3B-2 cited before cannot mean functions performed by officers of any corporation. It must necessarily apply to officers of the corporation involved.

The by-laws of the defendant corporation define the duties of its officers, and Klune does not perform them, vicariously or otherwise. He is Production Manager, and although an officer might conceivably perform these duties, he is not acting as an officer when he performs them; he is acting as an officer when he performs the duties prescribed by the by-laws.

The plaintiff makes one other point which I deem without merit. He claims that Klune's position gave him special knowledge of corporate affairs so as to place him in the category of an "insider"; and upon this basis he is liable. But nowhere in the Act is liability imposed upon others than an owner of ten per cent, a director or officer, no matter to what extent he is "inside".

It may be argued that the view I have taken of the applicability of Section 16 (b) sets up an arbitrary rule. This may very well be true, but, as I see it, the Congress intended to, and did, do that very thing. It eliminated a subjective standard of proof requiring a showing of actual unfair use of inside information. It deleted a provision in an early draft declaring unlawful the improper disclosure of confidential information regarding securities by directors, officers and principal stockholders and holding that any profit made by any person to whom such unlawful disclosure was made should inure to corporate issuer.[2] Then the Con-

2 Hearings Before Senate Committee on Banking and Currency on S.Res. 84, 72d Cong. 2d Sess. and S.Res. 56 and 97, 73d Cong. 1st and 2d Sess. (1934) p. 6560;

162

gress limited the applicability of the provision of Section 16 (b) to certain specified persons, i. e. a stockholder owning more than 10 per cent of any class of equity security, a director or an officer of the issuer.

I am convinced the Congress clearly meant to draw the line some place and did so. Otherwise it might be argued that the Section applied to all highly paid employees or all employees with access to inside information, which was not the intention of Congress.

■ Plaintiff's cross-motion is denied and defendants' is granted.

Settle order.

Hearings Before House Committee on Interstate Commerce and Foreign Commerce on H.Res. 7852 and 8720, 73d Cong. 2d Sess. (1934) pp. 135–7.